UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DANNI GUO and JIAWEI LU, | Case No. 13-cv-05299 NC |
|---|---|
| Plaintiffs, | |
| v. | **ORDER FOR REASSIGNMENT WITH REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT** |
| 8BO.COM; 5123.COM; 16688.COM; BOTI.COM; and HUATI.COM, | |
| Defendants. | Re: Dkt. No. 47 |

Plaintiffs Danni Guo and Jiawei Lu move for entry of default judgment under Federal Rule of Civil Procedure 55(b)(2) against defendant domains. The case arises out of the alleged theft of plaintiffs' domain names by the registrant of the defendant domains in violation of the Anti-Cybersquatting Consumer Protection Act. 15 U.S.C. § 1125(d). Plaintiffs request injunctive relief in this in rem action to recover ownership of the domain names. Because plaintiffs have met the statutory requirements to establish liability under the ACPA, the Court GRANTS plaintiffs' motion for default judgment.

## I.  BACKGROUND

### A.  The Parties

Plaintiffs Danni Guo and Jiawei Lu are two individuals, husband and wife, who reside in China. Dkt. No. 47-2 at ¶ 1. The "registrant" refers to the defendant party who allegedly stole and transferred plaintiffs' domains to other registrars in violation of the ACPA. Dkt. No. 47-1. But because plaintiffs do not know the identity of the registrant,

Case No. 13-cv-05299 NC

plaintiffs identify the five domains as the defendants in this case.

Plaintiffs are the lawful owners of all five trademarks at issue in this case. Dkt. No. 47-2 at ¶ 2. The service mark, HUATI.COM, was registered under Danni Guo's name with the United States Patent and Trademark Office on November 19, 2013. Dkt. No. 49 at 17-18. The marks, BOTI.COM and 5123.COM, were registered with the USPTO on January 21, 2014. *Id.* at 13-16. The remaining marks, 16688.COM and 8BO.COM, are currently in the registration process, with the USPTO having approved the marks for publication. *Id.* at 19-38. In the normal course of business, plaintiffs use the domains—8BO.COM, 5123.COM, 16688.COM, BOTI.COM, HUATI.COM—to redirect online users to Chinese-language websites. Dkt. No. 47-1, 49 at 1-11. Through this, plaintiffs contend that consumers "have come to associate these domains with the websites and services offered under directly corresponding trademarks." Dkt. No. 47-1 at 3.

### B. Factual Allegations

In August 2013, plaintiffs "attempted to compile an account report" of "the domain names [plaintiffs] registered with . . . [domain name registrar] eNom, Inc.," but discovered that their account had been hacked. *See* Dkt. No. 47-2 (Lu Decl.) at ¶ 3. All five domains were transferred from plaintiffs' eNom account to other registrars. *Id.* at ¶ 5; *see* Dkt. No. 49 at 39-83. One domain, HUATI.COM, was transferred to the registrar, Cloud Group Limited, while the other domains—8BO.COM, 5123.COM, 16688.COM, BOTI.COM—were transferred to GoDaddy, Inc. *Id*.

In response, eNom conducted an internal investigation, and found that the registrant of the defendant domains transferred plaintiffs' domains to another eNom account prior to the transfers to the receiving registrars, GoDaddy and Cloud Group. Dkt. No. 47-1. Initially, plaintiffs registered all five domain names under the account username, "ljw2288," with associated email address, "jiawei2288@139.com." Dkt. No. 47-2 at ¶ 4. After plaintiffs informed eNom of the theft, eNom immediately contacted GoDaddy and Cloud Group. Dkt. No. 47-1, 49 at 39-83. eNom requested Forms of Authorization from both receiving registrars "to learn the specifics of the domain name transfers for each of

the [d]efendant domains." Dkt. No. 47-2 at ¶ 7, 49 at 39-83. Plaintiffs allege that both GoDaddy and Cloud Group, in turn, confirmed that the registrant of the defendant domains changed plaintiffs' email address to "chanlee999@gmail.com," and effectuated the transfer of the marks using the false address. Dkt. No. 47-1, 47-2 at ¶ 9, 49 at 39-83.

The registrant also either "provided false W[HOIS] contact information" or removed the domain names from the protection of the privacy service that they originally employed to protect their personal records. Dkt. No. 47-1, 47-2 at ¶ 9, 49 at 39-112. Prior to the theft, plaintiffs listed "mageejack3366@gmail.com" as their personal email. *Id.* After the transfer, plaintiffs learned that their WHOIS contact information for the five domains was altered, and that some domains were no longer under the protection of the privacy service that plaintiffs employed. *Id.* Instead, 8BO.COM, 5123.COM, and BOTI.COM's associated email addresses changed to "smakeliao@foxmail.com" while 16688.COM's associated email address changed to "chanlee999@163.com." *Id.* The remaining service mark, HUATI.COM, was "already masked by another privacy service." *Id.*

### C. Procedural History

On November 14, 2013, plaintiffs filed a complaint against defendant domains in the Northern District of California. Dkt. No. 1. In their complaint, plaintiffs alleged that the registrant of the defendant domains violated the ACPA by stealing plaintiffs' trademarks, and by transferring them to different domain registrars with bad faith intent. Dkt. 47-1. On February 26, 2014, Plaintiffs filed an amended complaint. Dkt. No. 15. Plaintiffs then moved for waiver of service by postal mail and publication. Dkt. No. 16. The Court denied the motion on June 6, 2014. Dkt. No. 24. Subsequently, the Court directed plaintiffs to complete service by postal mail and publication for four consecutive Saturdays in an Australian newspaper, the *Gold Coast Bulletin*. Dkt. No. 31. Plaintiffs completed service accordingly. Dkt. No. 39.

From the start of this action, defendant domains have not replied to any filings by plaintiffs. On April 13, 2015, plaintiffs filed a motion for entry of default against

Case No. 13-cv-05299 NC 3

1    defendant domains. Dkt. No. 45. The next day, the clerk entered entry of default against
2    defendant domains. Dkt. No. 46. Defendant domains have since not responded nor filed
3    an opposition to the motion for default judgment.

### D. Jurisdiction and Venue

In considering whether to enter a default judgment, a district court must first determine whether it has jurisdiction over the parties and the subject matter. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the ACPA, a federal statute. 15 U.S.C. § 1125(d).

As to personal jurisdiction, under the ACPA, in rem jurisdiction over a domain name registrar is statutorily appropriate when plaintiffs, through due diligence efforts, cannot locate the defendant and thus, cannot obtain personal jurisdiction. 15 U.S.C. § 1125(d)(2)(A). Here, plaintiffs are unable to locate the registrant of the defendant domains, who has not responded to any of the pleadings set forth under this action. Therefore, the registrant's identity is not known. Plaintiffs have exercised due diligence in their efforts to locate the registrant by sending notice of the suit through email, postal mail, and publication in a newspaper for the length of time stipulated in the order. Dkt. No. 39.

Therefore, the Court finds that it holds in rem jurisdiction over the defendant domains in this action under 15 U.S.C. § 1125(d)(2)(A). *See, e.g., Citigroup Inc. v. CitiThankYou.com*, No. 14-cv-855 TRJ, 2014 LEXIS 180317, at *7 (E.D. Va. Dec. 12, 2014) (finding in rem jurisdiction appropriate where the infringing "domain names violate plaintiffs trademarks and service marks and plaintiff cannot obtain personal jurisdiction over the registrants").

Venue is also proper under 15 U.S.C. § 1125(d)(2)(A) and (C) because the domain name registry, Verisign, Inc., is located within the Court's judicial district.

Finally, the Court notes that plaintiffs consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. No. 12. Defendant domains never consented to the jurisdiction of a magistrate judge and, therefore, this Court lacks the authority to rule on a

Case No. 13-cv-05299 NC            4

motion that could dispose of the case against them. 28 U.S.C. § 636(c); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) ("Federal Rule of Civil Procedure 55(b)(2) permits the Court, following a defendant's default, to enter a final judgment in a case"). The Court therefore refers this case to the clerk's office for reassignment to a district court judge.

### E. Service of Process

A trademark owner filing an in rem civil action must complete service by "sending notice of the alleged violation . . . to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar," and by "publishing notice of the action as the court may direct promptly after filing the action." 15 U.S.C. § 1125(2)(A)(II). On December 19, 2013, plaintiffs' counsel sent notice of the lawsuit, through email and postal mail, to each infringing domain. Dkt. No. 11 at ¶ 2-4. On March 14, 2014, plaintiffs filed a motion to waive service by postal mail and publication, which the Court denied. Dkt. No. 16, 24. The Court then ordered service through publication on August 4, 2014. Dkt. No. 31. Plaintiffs complied with the terms of the order by publishing notice of the action in the *Gold Coast Bulletin*, an Australian newspaper, for four consecutive Saturdays. Dkt. No. 39. Therefore, plaintiffs completed service of process. *See* 15 U.S.C. §§ 1125(d)(2)(A)(ii)(II)(bb); Dkt. No. 39.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v.*

Case No. 13-cv-05299 NC          5

*McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Shanghai Automation Instrument*, 194 F. Supp. 2d at 995; *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

## III. DISCUSSION

The ACPA provides affirmative relief for victims of cybersquatting, where an individual other than the trademark owner, registers a domain name similar or identical to the protected mark but "attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley v. Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). To establish civil liability under the ACPA, a plaintiff must demonstrate that (1) the defendant registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive trademark; and (2) the defendant has a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(A); *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (finding that bad faith intent to profit from a protected mark "is an essential prerequisite to . . . an ACPA violation").

Here, as to prong one, the registrant of the defendant domains transferred and registered five domain names identical to plaintiffs' distinctive marks without plaintiffs' authorization. Plaintiffs discovered all five domain names under their name—8BO.COM, 5123.COM, 16688.COM, BOTI.COM, HUATI.COM—were transferred out of their account and into another eNom account prior to being transferred to other registrars. Dkt. No. 47-1. GoDaddy and Cloud Group, the two receiving registrars where the marks were unlawfully transferred to, confirmed to eNom that the registrant transferred and registered domain names precisely identical to plaintiffs' lawfully owned marks. Dkt. No. 49 at 39-83. Plaintiffs did not authorize or participate in the transfer of the domain names. Dkt. No. 47-2 at ¶ 10, 11. Thus, plaintiffs have sufficiently pled facts to establish that the

Case No. 13-cv-05299 NC        6

registrant engaged in the transfer, and that the infringing domain names are identical to plaintiffs' lawfully owned marks.

The ACPA lists nine non-exhaustive factors used to determine whether a "bad faith intent" to profit from a protected mark exists. *See* 15 U.S.C. § 1125(d)(1)(B)(i). These factors include but are not limited to:

> (1) Defendant's intellectual property rights in the domain name; (2) defendant's prior use of the mark in connection to the bona fide offering of goods; (3) defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and (4) defendant's provision of a misleading or false contact information when applying for registration of the domain name.

15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (V), (VII). The ACPA "notes that the use of the listed [factors] is permissive." *Lahoti*, 586 F.3d at 1202. Therefore, proving one of the factors does not automatically establish "bad faith intent"; rather, "the most important grounds for finding bad faith are the unique circumstances of the case." *See* 15 U.S.C. § 1125(d)(1)(B)(ii); *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002). Thus, even if a claim satisfies one of the factors, bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

In this case, plaintiffs allege sufficient facts, which the Court accepts as true, to show that the registrant of the defendant domains acted with "bad faith intent" in violation of the ACPA. The record does not show, and the registrant has not proffered, evidence demonstrating that the registrant held intellectual property rights in the infringing domain names. *See* Dkt. No. 1, 15, 47-49. The record also does not suggest that the registrant engaged in prior use of the marks in a bona fide commercial capacity. Dkt. No. 47-1. Furthermore, the registrant's unauthorized transfer of plaintiffs' domain names allegedly precluded plaintiffs from their intended use, which subsequently caused the plaintiffs to lose customers who have come to associate plaintiffs' links to certain websites. *Id*.

1   The registrant also provided misleading and false contact information when
2   registering the domain names. From their investigation, eNom found that the registrant
3   used the login ID, "chanlee," to transfer plaintiffs' domain names internally to another
4   eNom account whereas plaintiffs' original login ID was "ljw2288." Dkt. No. 47-2 at ¶ 6.
5   In addition, the registrant used alternative email addresses to register the domain names to
6   GoDaddy and Cloud Group. Dkt. No. 47-2 at ¶ 8, 49 at 39-83.

7   Moreover, the registrant provided misleading and false contact information by
8   altering plaintiffs' WHOIS information from the privacy service plaintiffs employed to
9   protect their identity. Dkt. No. 47-2 at ¶ 9, 49 at 39-112. Plaintiffs also found that the
10  registrant removed some of the domains from the protection of the privacy service
11  employed by plaintiffs. *Id.* A finding of bad faith is further corroborated by the
12  registrant's failure "to correct the fraudulent transfer after receiving plaintiff[s'] notice of
13  alleged violations and theft of the [d]omain [n]ames." *Gong Zheng Jin v. 001HH.com*, No.
14  14-cv-1120 TRJ, 2015 LEXIS 70062, at *11 (E.D. Va. May 7, 2015) (finding default
15  judgment in a cybersquatting case where a defendant registrant transferred and registered
16  defendant domain names in bad faith). eNom attempted to contact the registrant by
17  notifying them through the email associated to each infringing domain name post transfer.
18  Dkt. No. 47-1. Despite eNom's attempts to communicate, the registrant has not
19  responded. Construing the factual allegations in favor of the plaintiffs, the factors weigh in
20  favor of a finding that the registrant of the defendant domains acted with "bad faith intent"
21  to profit from plaintiffs' domain names.

22  Accordingly, the first two *Eitel* factors—the merits and sufficiency of the
23  complaint—weigh in plaintiffs' favor. In addition, the Court finds that the remaining *Eitel*
24  factors also favor plaintiffs: the remedy plaintiffs seek is appropriate; plaintiffs would be
25  prejudiced without action from the Court; no dispute exists as to the material facts of the
26  complaint because defendant domains have not appeared before the Court; default is not a
27  result of excusable neglect because plaintiffs have attempted to provide notice to defendant
28  domains on numerous occasions; and public policy does not favor a decision on the merits.

## IV. CONCLUSION

For the reasons explained, the Court GRANTS plaintiffs' motion for default judgment on the cybersquatting claim. Accordingly, the Court finds that plaintiffs are entitled to injunctive relief, and orders the following: (1) GoDaddy, Inc. and Cloud Group Limited, the current registrars for the defendant domains, to transfer ownership and control of the defendant domain names back to plaintiffs; (2) Verisign, Inc. to change the registrar of record for the defendant domains—8BO.COM, 5123.COM, 16688.COM, BOTI.COM, HUATI.COM—to a registrar of plaintiffs' choosing; and (3) the registrar of record is authorized to complete the transfer of defendant domains to plaintiffs. *See, e.g., Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, 12-cv-02525 BLF, 2014 WL 5773197 (granting default judgment in an anti-cybersquatting case, and authorizing the transfer of "ownership and control" of the infringing domain names to plaintiff).

Because defendant domains never consented to the jurisdiction of a magistrate judge, this Court lacks the authority to rule on this default judgment motion and dispose of the case. 28 U.S.C. § 636(c). This case will therefore be reassigned to a district court judge.

Any party may object to this recommendation within 14 days. Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: July 15, 2015

NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 13-cv-05299 NC        9